## WILLIAM TARBLE

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa September 27, 1884.*

1. BILL OF EXCEPTIONS—*its requisites.* An exception to the ruling of the court as to the admission of evidence must appear from the bill of exceptions. It is not sufficient that the clerk of the trial court recites there was such exception taken, and this court can not act on such recital.

2. This court can not pass upon the facts of a criminal case, and decide whether a new trial should have been awarded, where the bill of exceptions fails to state that all the evidence is embodied therein.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding.

This was an indictment against the plaintiff in error for robbery, tried at the February term, 1882, of the circuit court of Kane county. The trial resulted in the conviction and sentence of the defendant to six years' imprisonment in the penitentiary.

The first point made is, that the evidence was not sufficient to justify the verdict.   The prosecution examined James Cook and Dr. Blood, (the latter the person who was alleged to have been robbed,) and rested.   The witness Cook testified, in substance, that he knew the defendant; that he (witness) was in the St. Cloud saloon, in Aurora, on February 4, 1882, at about eight o'clock in the evening; that Dr. Blood came in and took a drink of whisky, and shortly after fell to the floor, insensible; that one Meggison, the keeper of the saloon, asked witness to take Blood out on the street and walk him around, and sober him up; that he led Blood up the stairs and out upon the street, and over to Roach's livery stable, to let him sober off there; that he went to the door of the stable, and found the door fastened, when he started back to where he left the doctor, and saw Tarble bending over the doctor, and saw him take the doctor's pin out of his scarf; that he asked Tarble what he was doing, when Tarble said, "that is all right,—you just keep your mouth shut;" that he then took Blood to the Fitch House, where he left him, after taking him up-stairs; that he afterwards saw the watch in the possession of Tarble, and told him (Tarble) that the "nigger" at the Fitch House would come out on him, and that Tarble then gave him a dollar to give to the "nigger," to keep him still, or his "mouth shut."   On cross-examination the witness said he saw Tarble slip the pin out of Blood's scarf, and was about twelve feet away; that this was about half-past eight in the evening; that there was no moon, and it was quite dark; that he gave no alarm when Tarble took the pin, and said nothing to any one about the matter; that when he took Blood to the Fitch House he was afraid of Tarble, and that he took the dollar that Tarble gave him to purchase silence.

Alfred Blood testified that he went to the St. Cloud saloon and took a drink of what he supposed to be whisky, and soon after became unconscious; that the first recollection he had

was of a man standing over him taking something from his bosom, or scarf; that he put his hand up to keep the man away, and found his pin was gone; that he thought the man was a smooth-faced man, and that the prisoner resembled him; that when he came to himself he was at the Fitch House, in bed, and his watch, worth $30, and diamond pin, worth $100, were gone; that he would not swear that Tarble was the man who took his pin out of the scarf, and that he made no noise or outcry when the person took the pin.

The defendant called three witnesses, who testified that Tarble was present with them in a back room of the St. Cloud saloon from half-past seven until nine o'clock in the evening of the alleged robbery, but they were not positive he was there all the time.

The defendant testified that he went to the St. Cloud saloon between six and seven o'clock in the evening, and remained there until nine o'clock; that Frank Clancey called him out, and he went with him to Evans' and got some oysters; that he did not see Blood on that evening, and did not take any of the articles or property mentioned in the indictment, from him. On cross-examination he testified that he had been arrested before, and had been in the penitentiary for burglary. This evidence was objected to, but the court overruled the objection.

The People then called O. S. Clayton, M. R. Bruce, John Wolfert, Fred Long, Chris Zimmer, A. G. McDole, A. Busbee and Isaac Martin, all of whom testified that they were acquainted with the defendant's reputation for truth and veracity in the community in which he resided, and that it was bad, and that they would not believe him under oath. Bruce said: "I would not believe him under oath. He robbed my store two years ago." Wolfert testified that defendant's reputation was very bad. "I *know* it is bad, because he stole my goods." All this was objected to by the defendant, but the court overruled the objection.

No instructions are given in the record.

The errors assigned are: First, the court erred in giving improper instructions for the People; second, the court erred in refusing proper instructions asked by the plaintiff in error; third, the court erred in excluding proper evidence offered by plaintiff in error; fourth, the court erred in admitting improper testimony offered by the People; fifth, the verdict is against the law and the evidence.

Mr. W. R. S. HUNTER, for the plaintiff in error.

Mr. JAMES McCARTNEY, Attorney General, for the People.

Per CURIAM: This is a writ of error, upon which it is sought to reverse a conviction of plaintiff in error upon an indictment for robbery. There is no question of law saved in the record in such manner as to bring the same before this court. The bill of exceptions fails to state that all the evidence is embodied therein. In such case we can not undertake to pass upon the facts. The bill of exceptions shows that several objections were taken to the admission of evidence in the progress of the trial, and that some of these objections were overruled by the court; but the bill of exceptions does not show that exceptions were taken to such rulings. The abstract is found to be incorrect in this regard. In the recitals made by the clerk it is said, that as to some of the rulings of the court defendant did except. This, as has often been decided, is no part of the record, and we can not act upon the same.

The judgment of conviction is therefore affirmed.

*Judgment affirmed.*